UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWOINE BEALER,<br><br>   Plaintiff,<br><br>  vs.<br><br>WARDEN OF KVSP, et al.,<br><br>   Defendants. | 1:12-cv-01516-AWI-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION IN LIMINE BE DENIED, AND THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED (ECF Nos. 48, 59.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.      BACKGROUND**

Antwoine Bealer ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. On September 14, 2012, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) This case now proceeds with the Fourth Amended Complaint filed on March 28, 2014, against defendants Correctional Officer (C/O) S. Rios and Sergeant (Sgt.) Brannum ("Defendants") for use of excessive force in violation of the Eighth Amendment.[1]  (ECF No. 21.)

---

[1] On October 29, 2014, the court issued an order dismissing all other claims and defendants from this action for Plaintiff's failure to state a § 1983 claim. (ECF No. 33.)

1

On April 13, 2015, Defendants filed a motion for summary judgment.[2] (ECF No. 48.) On May 11, 2015, Plaintiff filed an opposition to the motion.[3] (ECF No. 55.) On May 18, 2015, Defendants filed a reply to the opposition. (ECF No. 57.)

Defendants' motion for summary judgment is now before the court. Local Rule 230(*l*). For the reasons set forth below, the court recommends that Defendants' motion be denied on the grounds that Plaintiff's excessive force claim is not barred by the rule in Heck v. Humphrey[4], and Defendants failed to show an absence of a triable issue of fact.

## II.   SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

///

---

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

[3] Based on the mailbox rule of Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988), a pro se prisoner's court filing is deemed filed at the time the prisoner delivers it to prison authorities for forwarding to the court clerk. Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009). The court finds Plaintiff's opposition, signed on May 3, 2015, to be timely filed under the mailbox rule.

[4] 512 U.S. 477, 486-87 (1994).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." Id. (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III. PLAINTIFF'S CLAIMS AT ISSUE[5]

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation (CDCR), currently housed at Corcoran State Prison (CSP) in Corcoran, California. The events giving rise to the claims at issue in this action allegedly occurred at Kern Valley State Prison (KVSP) in Delano, California, when Plaintiff was incarcerated there.

---

[5] Plaintiff's Fourth Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

Plaintiff claims that defendants Rios and Brannum used excessive force against him in violation of the Eighth Amendment. Plaintiff's allegations follow.

On November 1st, 2010, Officers Rios and Brannum were escorting Plaintiff to the Program Office for refusing a cell mate. Officer Brannum said to Plaintiff repeatedly, "You're running the yard now?!" Plaintiff asked him what he was talking about. Shortly after, Plaintiff was pushed/thrown to the ground and Officer Brannum said, "Sometimes we think that we are being tough, then we find out that we are not so tough," while Plaintiff's arms were being bent in awkward positions and knees were being placed in Plaintiff's back and on his legs. Afterward, Plaintiff was placed in the cage inside the Program Office. Plaintiff was bleeding from his injuries and was examined by a nurse. Plaintiff was placed in the ASU (Administrative Segregation Unit) for approximately 7 months.

**IV.   DEFENDANTS' UNDISPUTED FACTS**

1. Plaintiff Bealer is a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) and was incarcerated at the Kern Valley State Prison (KVSP), on November 1, 2010. (Hancock Decl. ¶3.)

2. Defendant Rios was a correctional officer employed by CDCR at KVSP on November 1, 2010. (Rios Decl. ¶1.)

3. Defendant Brannum was a correctional sergeant employed by CDCR at KVSP on November 1, 2010. (Brannum Decl. ¶1.)

4. On November 1, 2010, at approximately 4:54 p.m., Defendants Brannum and Rios escorted Bealer to the Program Office for his placement in Administrative Segregation for refusal to accept a cellmate. (Brannum Decl. ¶4; Rios Decl. ¶4.)

5. Bealer was issued a CDC-115 rule violation report for refusing a cellmate/refusing assigned housing under CCR 3005(c). (Brannum Decl. ¶6; Rios Decl. ¶6; Hancock Decl. ¶4, Ex. B.)

6. Bealer has a long history of refusing to accept cellmates. (Brannum Decl. ¶7; Rios Decl. ¶ 7.)

7. Defendants Rios and Brannum escorted Bealer, who was handcuffed, out of building 7. (Brannum Decl. ¶¶4, 8, 9; Rios Decl. ¶¶4, 8, 9.)

8. While crossing the grass in the yard, Bealer was informed he was going to Administrative Segregation placement for his refusal to accept a cellmate and for violating CCR 3005 (c), Refusing Housing Assignment. (Brannum Decl. ¶10; Rios Decl. ¶10.)

9. Upon hearing this, Bealer became resistive by holding his feet in front of himself to stop the escort. (Brannum Decl. ¶11; Rios Decl. ¶11.)

10. Both Defendants Rios and Brannum ordered Bealer to continue. (Brannum Decl.¶ 12; Rios Decl. ¶12.)

11. After crossing the grass area and going onto the asphalt, Bealer stated "This is bullshit" and turned toward Officer Rios and attempted to head-butt him. (Brannum Decl. ¶14; Rios Decl. ¶14.)

12. A minimal amount of physical force was then used to gain control of Bealer. (Brannum Decl. ¶23; Rios Decl. ¶23.)

13. Defendant Brannum was on Bealer's left side holding onto Bealer's left forearm. (Brannum Decl. ¶15.) When Bealer attempted to strike Defendant Rios, Defendant Brannum pulled back and upward while holding onto Bealer's forearm. (Brannum Decl. ¶15.)  With Defendants Brannum and Rios' combined weight, they were able to put Bealer on the ground. (Brannum Decl. ¶¶16-18; Rios Decl. ¶¶17-19.)

14. Defendant Rios was on Bealer's right side holding onto Bealer's right forearm when Bealer attempted to head-butt him. (Rios Decl. ¶15.) Defendant Rios lifted Bealer's right forearm up, bending Bealer at the waist, and forced him to the ground. (Brannum Decl. ¶¶16-18; Rios Decl. ¶¶ 17-19.)

15. Leg restraints were placed on Bealer following the incident. (Brannum Decl. ¶21; Rios Decl. ¶21.)

16. Bealer alleges he was assaulted by Defendants Rios and Brannum after Defendant Brannum repeatedly stated, "you're running the yard now" to Bealer and then he was pushed to the ground by Rios and Brannum. (Fourth Amd. Compl. ¶4.)

17. Bealer was escorted to the infirmary where an abrasion to Bealer's right knee and the back of his left ankle were noted on the Medical Report of Injury or Unusual Occurrence following the incident. (Hancock Decl. ¶3, Ex. A.)

18. Bealer claims he received additional injuries that were not documented. (Fourth Amd. Compl. ¶4.)

19. Defendant Rios also received a minor injury from the incident. (Hancock Decl. ¶3, Ex. A.)

20. Bealer was issued a CDC 115 Rules Violation Report in connection with this incident, charging him with violating the California Code of Regulations, Title 15, Section 3005 (d)(1), for the specific attempted battery of a peace officer. (Hancock Decl. ¶3, Ex. A.)

21. Bealer was rehoused in Administrative Segregation as a result of the incident. (Hancock Decl. ¶3, Ex. A.)

22. Bealer received a CDC-115 Rules Violation Report authored by Defendant Rios on November 11, 2010 for the November 1, 2010 incident, charging Bealer with "assault on a police officer resulting in use of excessive force." (Hancock Decl. ¶3, Ex. A.)

23. On February 4, 2011, Bealer appeared at a disciplinary hearing on the Rules Violation Report. (Hancock Decl. ¶3, Ex. A.)

24. Bealer pled "not guilty" to the charges at the hearing stating, "I didn't assault no one." The plea was considered and the defense was offered. (Hancock Decl. ¶3, Ex. A.)

25. The hearing officer set forth the facts and evidence substantiating the charge, finding the following: On November 1, 2010, at approximately 4:54 p.m., Bealer suddenly attempted to turn toward Rios and attempted to strike Rios on the head with his head and right shoulder while Rios and Brannum were walking on the Facility A Upper Yard between building 8 and the patio area. (Hancock Decl. ¶3, Ex. A.)

26. The Senior Hearing Officer found there was no evidence at the hearing to exonerate Bealer and that a finding of guilty was appropriate. (Hancock Decl. ¶3, Ex. A.)

///

///

27. The Senior Hearing Officer who presided over the hearing found Bealer guilty of violating Cal. Code Regs. tit. 15, § 3005(d)(1) "force or violence – assault on a peace officer resulting in use of force."1 (Hancock Decl. ¶3, Ex. A.)

28. As a result of this rules-violation conviction, Bealer was assessed one hundred and fifty days loss of behavioral/work credit and ninety-days loss of privilege. (Hancock Decl. ¶3, Ex. A.)

29. The CDC 115 Rules Violation Report was never overturned. (Hancock Decl. ¶5, Ex. A.)

**V.     PLAINTIFF'S STATEMENT OF FACTS[6]**

1. On November 1, 2010, I was told that I was going to be placed in "the Hole" (Administrative Segregation) for refusing a cell mate, and to turn around and "cuff up."

2. I complied.

3. The hand cuffs were placed on me.

4. After the door was opened, I was told to step to the left side of the door.

5. My pants were then stripped off, forcefully, and I was told to take off my shoes.

6. On the way down the stairs, I had to keep myself from falling. By the way, I was being escorted.

7. After we got outside of the building, Officer Brannum kept placing his right leg into my path as were walking and stating, "You're running the yard now," repeatedly.

8. I kept asking him what he was talking about.

9. While talking to Officer Brannum I kept turning to the left to face him.

10. Office Rios kept saying, "Face front."

11. As we got near the front on the tower, I was pushed/thrown to the ground and battered.

12. I kept hearing someone say, "He's not resisting." (Officers Brannum and Rios know this to be true.)

13. I was then leg-shackled and taken to the MTA Office.

///

---

[6] Plaintiff did not cite evidence for these thirteen facts. Fed. R. Civ. P. 56(c)(1).

## VI. PLAINTIFF'S MOTION IN LIMINE

A motion in limine is ordinarily used to exclude evidence from trial.[7] Here, however, Plaintiff has filed a motion in limine to exclude evidence at the summary judgment stage of this action. (ECF No. 59.) Plaintiff argues that his prison assault conviction is prejudicial to his excessive force claims, because this civil action is not an appeal of a criminal conviction, and the assault charge confuses the issues.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is relevant if (a) it has any tendency to make a fact more or less probable that it would be without the evidence, and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Here, Plaintiff's assault conviction is relevant to Defendants' argument in the motion for summary judgment that Plaintiff's excessive force claims are barred by the Heck rule. The court finds that the probative value of the conviction at this stage of the proceedings outweighs the danger of any unfair prejudice to Plaintiff or confusion of the issues. Therefore, Plaintiff's motion in limine should be denied.[8]

## VII. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that defendants Brannum and Rios did not use excessive force against Plaintiff in violation of the Eighth Amendment, that defendants Brannum and Rios are entitled to qualified immunity, and that Plaintiff is Heck-barred from pursuing this action. Defendants support their motion with the Declarations of R. Brannum, S. Rios, and B. Hancock, and documents from Plaintiff's prison file including, inter alia, a copy of Rules Violation Report No. FA-10-11-001. (ECF Nos. 48-4, 48-5, 48-6.)

///

---

[7] A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually introduced *at trial*. See Luce v. United States, 469 U.S. 38, 40 n.2 (1984) (emphasis added).

[8] If this case proceeds to trial, Plaintiff shall have another opportunity to bring motions in limine concerning evidence to be used at trial.

A. <u>**Heck v. Humphrey Rule**</u>

Defendants claim that Plaintiff's excessive force claims against defendants Brannum and Rios are barred by the Supreme Court's decisions in <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) and <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997), because an award for damages would necessarily imply the invalidity of his disciplinary conviction for assault of a peace officer pursuant to Cal. Code Regs., tit. 15 § 3005(d)(1). Because Plaintiff's disciplinary conviction has not been invalidated and his forfeited behavioral credits have not been restored, Defendants argue that Plaintiff's excessive force claims are inconsistent with his disciplinary conviction, and thus, must be brought in a habeas action, not pursuant to 42 U.S.C. § 1983.

Uncontroverted evidence in the record shows that after investigation and a disciplinary hearing conducted on February 4, 2011, Plaintiff was convicted of assault on a peace officer Resulting in the Use of Force in violation of Cal. Code Regs., tit. 15 § 3005(d)(1), and assessed a 150-day loss of credits which have not been restored. Defendants submit as evidence a copy of Rules Violation Report No. FA-10-11-001, retrieved from Plaintiff's case records and authenticated by the CDCR's custodian of records, B. Hancock. (Hancock Decl., ECF No. 48-6 ¶¶3, 5; Exh. A at 5-12.)

**<u>Discussion</u>**

"A state prisoner cannot use a § 1983 action to challenge the 'fact or duration of his confinement,' because such an action lies at the 'core of habeas corpus.'" <u>Simpson v. Thomas</u>, 528 F.3d 685, 693 (9th Cir. 2008) (quoting <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 489 (1973)). Thus, where a § 1983 action seeking damages alleges constitutional violations that would necessarily imply the invalidity of a conviction or sentence, the prisoner must first establish that the underlying sentence or conviction has already been invalidated on appeal, by a habeas petition, or terminated in his favor via some other similar proceeding. <u>Heck</u>, 512 U.S. at 438-37. This "favorable termination" rule applies to prison disciplinary proceedings, if those proceedings resulted in the loss of good-time or behavior credits. <u>Balisok</u>, 520 U.S. at 646-48 (holding that claim for monetary and declaratory relief challenging validity of procedures used to deprive prisoner of good-time credits is not cognizable under § 1983); <u>see also Wilkinson v.</u>

Dotson, 544 U.S. 74, 81-82 (2005) (explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) if success in that action would necessarily demonstrate the invalidity of confinement or its duration" (emphasis omitted)).  Stated another way, a § 1983 claim is barred if the "plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'"  Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (citing Heck, 512 U.S. at 487 n. 6).  However, when the § 1983 claim does not necessarily implicate the underlying disciplinary action (or criminal conviction), it may proceed.  See Muhammad v. Close, 540 U.S. 749, 754-55 (2004).

In several cases, the Ninth Circuit has applied Heck's favorable termination requirement to consider, and sometimes preclude, excessive force claims brought pursuant to 42 U.S.C. § 1983.  For example, in Cunningham, the case upon which Defendants rely, the Ninth Circuit found § 1983 excessive force claims filed by a prisoner who was convicted of felony murder and resisting arrest were barred by Heck because his underlying conviction required proof of an "intentional provocative act" which was defined as "not in self defense."  312 F.3d at 1152.  A finding that police had used unreasonable force while effecting the plaintiff's arrest, the court held, would "call into question" the validity of factual disputes which had necessarily already been resolved in the criminal action against him.  Id. at 1154.  However, in Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005), the Ninth Circuit considered whether excessive force allegations of a prisoner who pled guilty to resisting arrest pursuant to Cal. Penal Code § 148(a)(1) were also barred by Heck and found that "Smith's § 1983 action was not barred . . . because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction."  Id. at 693.  Under such circumstances, the Ninth Circuit held that Smith's § 1983 action "neither demonstrated nor necessarily implied the invalidity of his conviction."  Id.; see also Sanford v. Motts, 258 F.3d 1117, 1120 (9th Cir. 2001) ("If the officer used excessive force subsequent to the time Sanford interfered with the officer's duty, success in her section 1983 claim will not invalidate her

conviction. Heck is no bar."); Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest under Cal. Penal Code § 148(a)(1) does not "bar a § 1983 claim for excessive force under Heck if the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'").

Here, unlike the defendants in Cunningham, defendants Brannum and Rios have not shown that Plaintiff's excessive force claims against them are necessarily inconsistent with his adjudication of guilt for assault on a peace officer. Thus, this court cannot say that Plaintiff's excessive force claims "necessarily imply the invalidity" of his assault conviction. Heck, 512 U.S. at 487. The factual context in which the force was used is disputed. Thus, even though Plaintiff was found guilty of willfully committing an assault by attempting to strike Officer Rios on the head with his head and right shoulder, Officers Brannum and Rios, if Plaintiff's testimony is believed, nevertheless could be found liable for responding "maliciously and sadistically" with the intent to cause him harm. See Hudson v. McMillian, 503 U.S. at 1, 7 (1992); Simpson v. Thomas, No. 2:03-cv-0591 MCE GGH, 2009 WL1327147 at *4 (E.D. Cal. May 12, 2009) (success on the plaintiff's Eighth Amendment excessive force claim would not necessarily invalidate his battery conviction pursuant to Cal. Code Regs., tit. 15 § 3005(c) because "even if Defendant acted unlawfully by using excessive force, Plaintiff could still have been guilty of battery"); accord Gipbsin v. Kernan, No. CIV S-07-0157 MCE EFB P, 2011 WL 533701 at *5-6 (E.D. Cal. 2011); Gabalis v. Plainer, No. CIV S-09-0253-CMK, 2010 WL 4880637 at *7 (E.D. Cal. 2010) ("It is possible for defendants to have used excessive force and for plaintiff to have attempted to assault a correctional officer. Thus, success on plaintiff's civil rights claims would not necessarily imply that the guilty finding and resulting loss of good-time credits is invalid."); Candler v. Woodford, No. C 04-5453 MMC, 2007 WL 3232435 at *7 (N.D. Cal. Nov. 1, 2007) ("Because defendants have not shown that a finding of their use of excessive force would necessarily negate an element of the battery offense, the Court cannot conclude that plaintiff's claims are barred under Heck.")

Based on the foregoing, the court does not find that Plaintiff's excessive force claims are barred by the Heck rule.

### B. Excessive Force – Eighth Amendment Claim

#### 1. Legal Standards

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson, 503 U.S. at 8. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

#### 2. Defendants' Position

Defendants argue that their actions of subduing Plaintiff by pushing him to the ground after he attempted to assault Officer Rios do not amount to an excessive use of force as a matter of law. Defendants assert that there is no evidence to show that the minimal force used was

used for any reason other than to restore discipline and order. Defendants also assert that Plaintiff only received minimal injuries consisting of scrapes on his knee and ankle from the incident. Defendants argue that the undisputed evidence shows they reasonably perceived Plaintiff to pose a threat to safety, they employed force only after Plaintiff attempted to assault defendant Rios, and the force utilized to subdue Plaintiff was reasonable and minimal. Defendants' evidence consists of their declarations.

> "On November 1, 2010 at approximately 4:54 p.m., I was tasked to assist with the escort of Plaintiff Bealer from Building 7 to the Program Office to await placement in Administrative Segregation for refusing to accept a cellmate. Plaintiff Bealer is a prisoner in the custody of the CDCR and was incarcerated at KVSP on November 1, 2010. Bealer was previously issued a CDC-115 rule violation report for refusing a cellmate/refusing assigned housing under CCR 3005(c). Bealer has a long history of refusing to accept cellmates. Correctional Officer Rios was also tasked with the escort. Bealer was handcuffed for the escort. While crossing the grass in the yard, correctional officer Rios informed Bealer he was going to Administrative Segregation placement for his refusal to accept a cellmate and for violating CCR 3005(c), Refusing Housing Assignment. Upon hearing this, Bealer became resistive by holding his feet in front of himself to stop the escort. Correctional Officer Rios and I ordered Bealer to continue. Bealer initially complied, but was visibly upset. When we arrived on the asphalt on the Facility A upper yard, without warning, Bealer aggressively thrust his head and right shoulder toward Rios in an attempt to head-butt him, knocking both Rios and myself off balance. Based on Bealer's attempt to head-butt correctional officer Rios, I reacted by lifting Bealer's left arm back and upward, as I was located on Bealer's left side holding onto his left forearm. Our combined efforts caused Bealer to bend at the waist. Rios ordered Bealer to get down. He did not comply. Based on Bealer's refusal to comply with correctional officer Rios' order, Rios and I used our combined body weight and momentum to force Bealer to the ground. I called a Code 1 Resistive Inmate via my institutional radio. I maintained control of Bealer's left arm until responding staff arrived."
>
> "My use of physical holds and force on Bealer was necessary because he attempted to assault correctional officer Rios by head-butting him. Bealer refused to comply with our orders to continue walking across the yard and then to get down after he attempted to assault correctional officer Rios. My use of physical force to subdue Bealer after he displayed combative conduct was solely to regain control of him and to secure my safety, that of other correctional staff and inmates, and that of Bealer himself. I never had any malicious intent to harm Bealer during the escort."

(Decl. of R. Brannum, ECF No. 48-4 ¶¶4-20, 23.)

> "On November 1, 2010 at approximately 4:54 p.m., I was tasked with escorting Plaintiff Bealer from Building 7 to the Program Office to await placement in Administrative Segregation for refusing to accept a

> cellmate. Plaintiff Bealer is a prisoner in the custody of the CDCR and was incarcerated at KVSP on November 1, 2010. Bealer was previously issued a CDC-115 rule violation report for refusing a cellmate/refusing assigned housing under CCR 3005(c). Bealer has a long history of refusing to accept cellmates. Correctional Sergeant Brannum was tasked with assisting me with the escort. Bealer was handcuffed for the escort. While crossing the grass in the yard, I informed Bealer he was going to Administrative Segregation placement for his refusal to accept a cellmate and for violating CCR 3005(c), Refusing Housing Assignment. Upon hearing this, Bealer became resistive by holding his feet in front of himself to stop the escort. Sergeant Brannum and I ordered Bealer to continue. Bealer was initially compliant but kept repeating, 'This is fucking bullshit.' After crossing the grass area and going onto the asphalt on the Facility A upper yard between FAB8 and the patio area, Bealer suddenly attempted to turn toward me quickly and attempted to strike me on the head with his head and right shoulder. Based on Bealer's attempt to head-butt me, I reacted by moving my head out of the way and lifted his right arm upward, as I was located on Bealer's right side holding onto his right forearm. Our combined efforts caused Bealer to bend at the waist. I ordered Bealer to get down. He did not comply. Based on Bealer's refusal to comply with my order, Sergeant Brannum and I used our combined body weight and momentum to force Bealer to the ground. I called a Code 1 Resistive Inmate via my institutional radio. I maintained control of Bealer's right arm until responding staff arrived."

> "My use of physical holds and force on Bealer was necessary because he attempted to assault me by head-butting me. Bealer refused to comply with my orders to continue walking across the yard and then to get down after he attempted to assault me. My use of physical force to subdue Bealer after he displayed combative conduct was solely to regain control of him and to secure my safety, that of other correctional staff and inmates, and that of Bealer himself. I never had any malicious intent to harm Bealer during the escort."

(Decl. of S. Rios, ECF No. 48-5 ¶¶4-20, 23.)

### 3. **Plaintiff's Position**

Plaintiff argues that unnecessary and excessive force was used against him by Defendants while he was being escorted to the program office to await placement in the ASU. Plaintiff's evidence consists of his allegations in the verified Fourth Amended Complaint.[9] (ECF No. 21.) Plaintiff's factual allegations in the Fourth Amended Complaint consist of the following, in their entirety:

> "On November 1st, 2010, Officers Rios and Brannum were escorting me to the Program Office for refusing a cell mate. Officer Brannum said to me repeatedly, 'You're running the yard now?!' I asked him what he

---

[9] Plaintiff's opposition to Defendants' motion for summary judgment is not verified and therefore has no evidentiary value. Moran v. Selig, 447 F.3d 748, 759-60 (9th Cir. 2006).

> was talking about.  Shortly after, I was pushed/thrown to the ground and Officer Brannum said, 'Sometimes we think that we are being tough, then we find out that we are not so tough,' while my arms were being bent in awkward positions and knees were being placed in my back and on my legs.  After, I was placed in the cage inside the Program Office.  I asked Officer Epperson if he could remove the handcuffs from my wrists and legs.  He replied, 'I don't give a f--- about you.'  I stated that he would not say that on the report.  He then said, 'You can tell them that I told you to suck my sweaty salty s---.'  I responded that I would.  While the nurse was examining me, I noticed that she was not marking down my injuries or recording that they were bleeding.  I questioned her as to why, and she replied that she did not see anything.  After I had been in ASU (Administrative Segregation Unit) for approximately 7 months, Associate Warden P. Denny placed me on behavior modification for again refusing a cell mate, and all of my property was taken, including eating utensils, hygiene products, sheets, blankets, and t-shirts."

(Fourth Amd Cmp, ECF No. 21 at 3-4 ¶IV.)

### 4.  **Discussion**

Defendants Rios and Brannum declare that while they were escorting Plaintiff across the prison yard on November 1, 2010, Plaintiff suddenly attempted to strike Officer Rios on the head with his head and right shoulder.  (Decl. of R. Brannum, ECF No. 48-4 ¶¶4, 14; Decl. of S. Rios, ECF No. 48-5 ¶¶4, 14.)  Defendants declare that they reacted to Plaintiff's attempt to head-butt Officer Rios by lifting Plaintiff's arms upward, causing Plaintiff to bend at the waist.  (Decl. of R. Brannum ¶¶15-16; Decl. of S. Rios ¶¶15-17.)  Defendant Rios declares that he ordered Plaintiff to get down, and when Plaintiff refused, defendants Rios and Brannum used their combined body weight and momentum to force Plaintiff to the ground.  (Decl. of S. Rios ¶¶18-19.)  Defendants declare that the physical force they used against Plaintiff was necessary because he attempted to assault Officer Rios, and after Plaintiff refused to comply with orders to get down, they used force solely to regain control of Plaintiff and to secure their safety, that of other correctional staff and inmates, and that of Plaintiff himself.  (Decl. of R. Brannum ¶23; Decl. of S. Rios ¶23.)  Defendants also specifically deny having any malicious intent to harm Plaintiff during the escort.  (Id.)

In contrast, Plaintiff's account of the escort indicates that he and the officers were walking along and talking, when Plaintiff was suddenly thrown to the ground forcefully enough to cause injury.  (Fourth Amd Cmp, Doc. 21 at 3-4 ¶IV.)  Plaintiff declares he was talking to Officer Brannum as they walked, asking Brannum what he was talking about, and shortly

thereafter Plaintiff was thrown to the ground and his arms were bent in awkward positions. (Id. at 3 ¶IV.) In addition, knees were placed in Plaintiff's back and on his legs. (Id.) Plaintiff also declares that he was bleeding from his injuries when the nurse examined him. (Id. at 4.)

The opposing parties' differing accounts of the escort raise a factual dispute over the circumstances under which Defendants used force against Plaintiff. This factual dispute is material to Plaintiff's Eighth Amendment claim and therefore, neither of the defendants, Rios or Brannum, is entitled to judgment as a matter of law on the issue of excessive force.

### C.  Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Even where the defendant moves for summary judgment on qualified immunity grounds, the plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the alleged misconduct. See LSO, Ltd. v. Stroh, 205 F.3d 1146, 1157 (9th Cir. 2000).

Courts generally engage in a two-part analysis in determining whether qualified immunity should apply. Tolan v. Cotton, 134 S.Ct. 1861, 1865 (2014). A court must first determine whether the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)).

"The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 1866 (citing Hope v. Pelzer, 536 U.S. 730, 739, 122 (2002)). State actors are "shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (citation and internal quotation marks omitted). "[T]he salient question ... is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." Id. (internal quotation marks and citation omitted). This inquiry must be undertaken in light of the specific

context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Defendants' qualified immunity argument rests on their disputed version of events during Plaintiff's escort and their contention that there was no constitutional violation. As discussed above, material facts are in genuine dispute as to whether there was a constitutional violation. Specifically, there is a dispute as to whether the officers threw Plaintiff to the ground in reaction to Plaintiff's assault on defendant Rios and his refusal to comply with an order. If there was no constitutional violation, then of course there is no violation of a clearly established constitutional right. But the material factual disputes which preclude summary judgment on that question also preclude summary judgment on Defendants' assertion of qualified immunity here. See LaLonde v. County of Riverside, 204 F.3d 947, 953 (9th Cir. 2000) ("The determination of whether a reasonable officer could have believed his conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed."). Therefore, the court finds that Defendants cannot succeed on their assertion of qualified immunity.

## VIII. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the court finds that evidence of Plaintiff's assault conviction should not be excluded at this stage of the proceedings, that evidence of genuine issues of material fact remaining for trial, and that Plaintiff's excessive force claim is not barred by the rule in Heck v. Humphrey. Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's motion in limine, filed on May 21, 2015, be **DENIED**; and
2. Defendants' motion for summary judgment, filed on April 13, 2015, be **DENIED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file

written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 15, 2015**              **/s/ Gary S. Austin**
                                           UNITED STATES MAGISTRATE JUDGE